# First District Court of Appeal
## State of Florida

_____

No. 1D2024-2304
_____

Rachel E. Shinault,

    Appellant,

    v.

State of Florida,

    Appellee.

_____

On appeal from the Circuit Court for Bay County.
Brantley S. Clark, Jr., Judge.


July 8, 2026

Treadwell, J.

Appellant challenges the trial court's revocation of her probation and ensuing prison sentence. After she violated the conditions of her probation by repeatedly using drugs and failing to remain in drug treatment, the trial court sentenced her to two years in prison with credit for time served.

Appellant filed a motion under rule 3.800(b)(2), Florida Rules of Criminal Procedure, and argued that (1) the trial court improperly designated and sentenced her as a violent felony offender of special concern (VFOSC) without jury findings to support the designation, and (2) after designating Appellant as such, the trial court failed to make written findings on whether she posed a danger to the community, as required by section

1

948.06(8)(e), Florida Statutes. We conclude that neither argument warrants reversal of her sentence.

## I.

With respect to Appellant's first argument, the State argues that Appellant failed to preserve the issue by objecting to the lack of jury findings during sentencing. Although Appellant filed a subsequent motion under rule 3.800(b)(2), the State asserts that rule 3.800(b) motions only apply to sentencing errors, not errors in the sentencing process. The State further asserts that, even if the issue had been properly preserved, jury findings were not required for Appellant's VFOSC designation in these probation revocation proceedings. We agree with the State on both assertions.

## A.

Appellant relies on *Erlinger v. United States*, 602 U.S. 821 (2024), for the proposition that a jury, not the trial judge, was required to make the findings necessary to support her designation as a VFOSC. In *Erlinger*, the Supreme Court continued its interpretation of the Fifth and Sixth Amendments requiring a unanimous jury to find every fact essential to an offender's punishment, which it had previously applied in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Erlinger*, 602 U.S. at 832–33. Accordingly, such lack-of-jury-findings claims are also known as *Apprendi* claims.

This Court has previously held that such claims can be raised in a motion pursuant rule 3.800(b). *Mack v. State*, 955 So. 2d 51, 55 (Fla. 1st DCA 2007); *Arrowood v. State*, 843 So. 2d 940, 941 (Fla. 1st DCA 2003). But after those decisions were issued, the Florida Supreme Court explained in *Jackson v. State* that rule 3.800(b) only applies to "errors in sentence-related orders," not to errors "in the sentencing process." 983 So. 2d 562, 572 (Fla. 2008). In other words, the error must be apparent in the sentencing order "entered as a result of the sentencing process." *Id.*

At the same time, however, the Florida Supreme Court recognized that "rule 3.800(b) encompasses any claim that could be raised under rule 3.800(a)." *Id.* at 574. Rule 3.800(a), in turn, had previously been recognized by this Court as "an appropriate

procedural vehicle for raising an *Apprendi* claim." *Hughes v. State*, 826 So. 2d 1070, 1072 (Fla. 1st DCA 2002). Thereafter, in *Plott v. State*, the Florida Supreme Court agreed that *Apprendi* claims could be asserted in a rule 3.800(a) motion. 148 So. 3d 90, 95 (Fla. 2014). Thus, for years, criminal defendants have permissibly raised *Apprendi* claims under rules 3.800(a) and 3.800(b).

Recently, however, the Florida Supreme Court receded from *Plott* and held that rule 3.800(a) "is *not* the proper vehicle for raising a claim of error under *Apprendi* and its progeny." *Maye v. State*, No. SC2023-1184, 2026 WL 1346031, at *1 (Fla. May 14, 2026). And if *Apprendi* claims are no longer cognizable under rule 3.800(a), it is time for this Court to reevaluate our conclusion that *Apprendi* claims are cognizable under rule 3.800(b), in light of the more recent decision in *Jackson* which explained that rule 3.800(b) only applies to "errors in sentence-related orders," not to errors "in the sentencing process." 983 So. 2d at 572.

Notably, Appellant does not contend that her *Apprendi/Erlinger* claim springs from an error in the sentence-related order. Nor could she. The claim that a jury, not the judge, is required to make a particular finding beyond a reasonable doubt "alleges an error in the sentencing process—not an error in the sentencing order itself." *Hicks v. State*, 422 So. 3d 607, 609 (Fla. 1st DCA 2025) (Winokur, J., concurring).[1] Indeed, "the 'ancient rule' that the government must prove to a jury every one of its charges beyond a reasonable doubt" is a "procedural protection." *Erlinger*, 602 U.S. at 830–31 (quoting *United States v. Haymond*, 588 U.S. 634, 641 (2019)); *see also Apprendi*, 530 U.S. at 484 (describing the "reasonable doubt" requirement as a "procedural protection"). The Florida Supreme Court has even recognized that *Apprendi* sets forth "a rule of procedure that simply changes who

---

[1] In *Maye*, the Florida Supreme Court complimented Judge Winokur's "thoughtful concurring opinion" in *Hicks*. 2026 WL 1346031, at *4 n.11. Justice Francis even endorsed Judge Winokur's discussion of "the sentence error versus sentencing process error distinction." *Id.* at *7 n.16 (Francis, J., concurring). We endorse the same.

decides certain sentencing issues." *Hughes v. State*, 901 So. 2d 837, 847–48 (Fla. 2005).

Accordingly, pursuant to *Jackson*, an *Apprendi* claim (or *Erlinger* claim) is not cognizable under rule 3.800(b) because it merely raises a procedural error. To the extent our pre-*Jackson* precedents held otherwise, we recede from those decisions. *Mack*, 955 So. 2d at 55; *Arrowood*, 843 So. 2d at 941.

Given that Appellant's *Erlinger* claim is not cognizable through her rule 3.800(b) motion, she failed to preserve the claim for appellate review.

B.

Even if Appellant's *Erlinger* claim had been preserved during sentencing, her designation as a VFOSC did not require any jury findings. As relevant here, Florida law defines a VFOSC as a person who is on felony probation and who has previously been convicted of a qualifying offense. § 948.06(8)(b)2, Fla. Stat. (2024). At the time of her recent sentencing, Appellant was on probation and had previously been convicted of aggravated assault, which is one of the qualifying offenses for VFOSC designation. § 948.06(8)(c)14, Fla. Stat. Appellant never contested her prior conviction for aggravated assault nor argued that such offense is not a qualifying offense for VFOSC designation. Appellant's sole contention is that the trial court's factual finding that she had previously been convicted of aggravated assault was a finding required by a jury.

But *Erlinger* does not require a jury to find the fact of Appellant's prior conviction for purposes of the VFOSC designation. *Sanderson v. State*, No. 1D2024-1311, 2026 WL 1314513, at *1 (Fla. 1st DCA May 13, 2026). The trial court could properly make that finding. *Id.* Moreover, any judicial fact-finding during Appellant's recent sentencing occurred "in probation revocation proceedings, in which there appears to be no Sixth Amendment concern regardless of the impact on Appellant's sentence." *Id.* at *2. For these reasons, we reject Appellant's *Erlinger* claim.

4

## II.

With respect to Appellant's second argument, the VFOSC statute required the trial court to make written findings on whether Appellant, as a VFOSC, posed a danger to the community. *See* § 948.06(8)(e), Fla. Stat. (stating "the court shall . . . [m]ake written findings"); *see also Whittaker v. State*, 223 So. 3d 270, 273–74 (Fla. 4th DCA 2017) ("The written findings requirement of section 948.06(8)(e) is mandatory, not discretionary." (quoting *Barber v. State*, 207 So. 3d 379, 384 (Fla. 5th DCA 2016))). The State concedes that the trial court was required to make the written findings on dangerousness and failed to do so, but it argues that such error was harmless.

### *A.*

The Fifth District has written most extensively on this error in the case of *Barber v. State*, and it concluded that "the proper remedy is to reverse the sentencing order and remand for another sentencing hearing with directions that the trial court make the necessary written findings." 207 So. 3d 379, 385 (Fla. 5th DCA 2016) (citing *Singh v. State*, 135 So. 3d 1136 (Fla. 5th DCA 2014)). Following the Fifth District's conclusion in *Barber*, other district courts have similarly remanded to the trial court to make the required written findings on dangerousness. *See, e.g.*, *Samuels v. State*, 429 So. 3d 533, 538 (Fla. 4th DCA 2026); *Walker v. State*, 354 So. 3d 626, 630–31 (Fla. 2d DCA 2023); *State v. Rincon*, 273 So. 3d 1101, 1103 (Fla. 3d DCA 2019); *Whittaker*, 223 So. 3d at 273–75. This Court has been no different. *See, e.g.*, *Powell v. State*, 376 So. 3d 834, 835 (Fla. 1st DCA 2024); *Glenn v. State*, 219 So. 3d 1010 (Fla. 1st DCA 2017).

None of the district courts, however, have analyzed an argument by the State that the trial court's failure to make written findings on dangerousness constitutes harmless error, when the trial court revokes probation anyway without such written findings. The Third District recently acknowledged the State's argument that such error was harmless in this context, but instead of analyzing the argument, the Third District rested on the above precedents. *Gibson v. State*, 422 So. 3d 691, 694 (Fla. 3d DCA 2025).

5

The Supreme Court "has consistently made clear that it is the duty of a reviewing court . . . to ignore errors that are harmless," including constitutional violations. *United States v. Hasting*, 461 U.S. 499, 509 (1983). As restated by the Florida Supreme Court, the "supervisory power of the appellate court is inappropriate when the error is harmless." *State v. Marshall*, 476 So. 2d 150, 152 (Fla. 1985) (quoting *State v. Murray,* 443 So. 2d 955, 956 (Fla. 1984)). Thus, appellate courts have a duty to determine harmless error even when the State fails to make an argument for such. *DeCastro v. State*, 406 So. 3d 988, 991 (Fla. 3d DCA 2025) (citing *Jackson v. State*, 107 So. 3d 328, 342 (Fla. 2012)). For these reasons, despite prior remands by this Court, we consider below whether a trial court's failure to make the necessary written findings under section 948.06(8)(e) is harmless when it nevertheless revokes probation without such findings. *Cf. Holton v. State*, 318 So. 3d 654, 657–58 (Fla. 1st DCA 2021) (analyzing a new issue—preservation—and affirming, despite this Court's prior cases remanding for the required written findings).

## B.

Harmless error analysis applies to both constitutional errors and errors not based on constitutional grounds, *Reynolds v. State*, 251 So. 3d 811, 815 (Fla. 2018), such as nonfundamental sentencing errors. *Mandri v. State*, 813 So. 2d 65, 66 (Fla. 2002). Indeed, "not all errors committed at a criminal sentencing require reversal," and the sentence "may be affirmed if such errors are harmless." *Brooks v. State*, 969 So. 2d 238, 241 (Fla. 2007). Thus, a trial court's failure to make certain findings is not a basis for remand if the error was harmless. *See, e.g.*, *Murray v. State*, 616 So. 2d 955, 955–56 (Fla. 1993); *Howard v. State*, 615 So. 2d 229, 229 (Fla. 1st DCA 1993).

For sentencing errors challenged under rule 3.800(b), an error "is harmless if the record conclusively shows that the trial court *would have imposed* the same sentence" absent the error. *Brooks*, 969 So. 2d at 241–43. In other words, a sentencing error is harmless "only if there is no reasonable possibility that the error contributed to the sentence." *Reynolds*, 251 So. 3d at 815 (quoting *Hurst v. State*, 202 So. 3d 40, 68 (Fla. 2016)). For example, if "there is no reasonable possibility that [a defendant] would have received

a lesser sentence absent the trial court's error," the error is harmless. *Smiley v. State*, 295 So. 3d 156, 177 (Fla. 2020).

*C.*

Applying these principles and authorities to the present case, we conclude that the trial court's failure to make the written findings pursuant to section 948.06(8)(e), Florida Statutes, was inconsequential and therefore harmless. Under the terms of that section, after a trial court makes the written findings, it uses those findings only to determine whether it must revoke probation, as follows:

> a. If the court has found that a violent felony offender of special concern poses a danger to the community, the court ***shall revoke*** probation and shall sentence the offender up to the statutory maximum, or longer if permitted by law.

> b. If the court has found that a violent felony offender of special concern does not pose a danger to the community, the court ***may revoke***, modify, or continue the probation or community control or may place the probationer into community control as provided in this section.

§ 948.06(8)(e)2, Fla. Stat. (emphasis added).

Under both conclusions above—irrespective of the finding of dangerousness—the trial court retains authority to revoke probation and sentence the defendant to prison. *Id.* Only if the trial court concludes that a defendant poses a danger to the community is the trial court's authority restrained, such that it may no longer continue probation but must revoke it and issue a prison sentence. *Id.* As the Fourth District has stated, "[a] trial court's finding under section 948.06(8)(e) . . . is significant because it determines whether revocation of probation is mandatory or discretionary." *Whittaker*, 223 So. 3d at 274. The Second District has similarly explained that section 948.06(8)(e) only "imposes minimum sentencing requirements *if* the VFSOC is found to be a danger to the community." *Walker*, 354 So. 3d at 630 (emphasis added). Thus, the only possible impact of the written findings under

7

section 948.06(8)(e) is to remove the trial court's discretion to continue probation.

In a case such as this, where the trial court did not continue probation but sentenced the defendant to prison for reasons unrelated to any finding of danger to the community, the trial court's failure to make written findings on such danger is harmless. Logically, the trial court "would have imposed" a prison sentence on Appellant even if it had made written findings about whether Appellant posed a danger to the community. *Brooks*, 969 So. 2d at 241–43. The trial court's lack of findings to support a continuation of probation, which it independently chose not to continue, cannot have affected the sentence. § 924.051, Fla. Stat. (2024). There is thus no reasonable possibility that the trial court's error "contributed to the sentence," *Reynolds*, 251 So. 3d at 815, and there is no reasonable possibility that Appellant would have received probation "absent the trial court's error." *Smiley*, 295 So. 3d at 177. Accordingly, the trial court's failure to make written findings pursuant to section 948.06(8)(e) was harmless.

Even the Fifth District in *Barber* recognized that a prison sentence is still "proper" and "legal" regardless of whether the defendant is found to pose a danger to the community. 207 So. 3d at 383–84. Nevertheless, the Fifth District reasoned that written findings are always necessary or else the statutory requirement would be rendered "meaningless in certain circumstances." *Id.* at 384. But harmless error analysis does not render a statute meaningless, just as it does not render a constitutional provision meaningless. Rather, the application of harmless error merely prevents a trial court from taking additional actions, such as making additional findings, that would themselves be meaningless. The Legislature, not the Judiciary, is responsible for crafting a statute to avoid scenarios where a trial court's violation of that statute becomes meaningless on appeal. Accordingly, we disagree with the Fifth District's reasoning in *Barber* that disregards harmless error and imposes meaningless factfinding on trial courts.[2]

---

[2] This is not a situation in which "meaningful appellate review" is hindered, *Walker v. State*, 462 So. 2d 452, 453–54 (Fla.

8

*D.*

The concurring opinion agrees that the harmless error standard requires affirmance but argues that we should not even apply the harmless error standard because Appellant has not experienced any adverse prejudice by the error to warrant harmless error review.

We believe that the harmless error standard applies, because the error in this case was entirely procedural. In other contexts, the failure by a trial court to make required findings during the sentencing process has been reviewed for harmless error. *Murray*, 616 So. 2d at 956; *Howard*, 615 So. 2d at 229; *see also Smiley*, 295 So. 3d at 177 (applying harmless error review to a trial court's sentencing order that did not adequately address the defendant's proposed mitigating circumstances). Even "meaningless procedural hiccup[s]" during sentencing are reviewed for harmless error. *Weiss v. State*, 720 So. 2d 1113, 1115 (Fla. 3d DCA 1998), *approved,* 761 So. 2d 318 (Fla. 2000); *see also Esquivel v. State*, 958 So. 2d 517, 518–19 (Fla. 3d DCA 2007) (applying the harmless error rule to "technical procedural errors"). Accordingly, the trial court's procedural error in failing to make the written findings required by section 948.06(8)(e), Florida Statutes, should be reviewed for harmless error.

The concurring opinion relies upon section 924.051(3), Florida Statutes, to support the use of a standard different than the harmless error standard. But section 924.051 codifies the harmless

1985), or the "public protection" is at risk, *State v. Rucker*, 613 So. 2d 460, 462 (Fla. 1993), by the trial court's revocation of probation absent a finding of dangerousness. To the extent the Fifth District's opinion in *Barber* can be read to suggest that "the protection of the public" requires written findings in every circumstance, 207 So. 3d at 384, regardless of the sentence imposed, we disagree. The trial court here inherently protected the public by sentencing Appellant to prison. Obviously, it would be a different circumstance under the VFOSC statute (and on appeal) if the trial court had continued probation without making the required written findings to determine whether Appellant posed a danger to the community.

error standard through its definition of "prejudicial error." *See Goodwin v. State*, 751 So. 2d 537, 543–44 (Fla. 1999) (explaining that the definition of "prejudicial error" in section 924.051 is "the converse of harmless error"). Indeed, the plain language of section 924.051 mirrors the harmless error standard. *Compare* § 924.051(1)(a), Fla. Stat. (defining an error as "prejudicial" if the error "*harmfully affected* the judgment or sentence") (emphasis added) *with Gaskin v. State*, 361 So. 3d 300, 309 (Fla. 2023) (explaining that an error is not "harmless" if there is a reasonable possibility that the error "contributed to" (i.e., *affected*) the sentence). This Court has also recognized the overlap between section 924.051 and the harmless error standard. *See Cole v. State*, 866 So. 2d 761, 764–65 (Fla. 1st DCA 2004) (citing section 924.051(3) for the harmless error standard).

The concurring opinion also relies on the line of cases dismissing appeals of non-adverse decisions or rulings. *See infra* (citing *Earl v. State*, 276 So. 3d 359 (Fla. 1st DCA 2019), *approved,* 314 So. 3d 1253 (Fla. 2021); *State v. Perez*, 979 So. 2d 986 (Fla. 3d DCA 2008)). This line of cases recognizes that a party "may appeal only from a decision in some respect adverse to him." *Earl*, 276 So. 3d at 361 (quoting *Credit Indus. Co. v. Remark Chem. Co.*, 67 So. 2d 540, 541 (Fla. 1953)) *see also* Philip J. Padovano, *Entitlement to Review*, 2 Fla. Prac., Appellate Practice § 10:4 (2026 ed.) ("An order is not reviewable if it is entirely favorable to the party seeking appellate review."). Indeed, district courts routinely dismiss appeals of non-adverse rulings in criminal cases. *See, e.g.*, *Harris v. State*, 413 So. 3d 890 (Fla. 3d DCA 2025); *Booker v. State*, 400 So. 3d 716, 717 (Fla. 3d DCA 2024); *Tate v. State*, 323 So. 3d 856 (Fla. 4th DCA 2021); *Johnson v. State*, 282 So. 3d 1002 (Fla. 1st DCA 2019).

Here, the underlying sentencing decision cannot be described as favorable to Appellant or more lenient than the law requires. *Cf. Earl*, 276 So. 3d at 361–62. After all, the trial court *revoked* probation and imposed a prison sentence. There is simply nothing inherently favorable or non-adverse about the substance of the decision or ruling below. As a result, the adverseness principle from this line of cases is inapplicable.

Finally, the concurring opinion places the burden on Appellant to establish that she was adversely impacted by the error. But the Florida Supreme Court has made clear that the burden on a criminal defendant during an appeal is merely to demonstrate "that an error occurred in the trial court, which was preserved by proper objection." *Goodwin*, 751 So. 2d at 544. Once that burden is met, the appellate court then engages in harmless error analysis. *Id*. To place a threshold burden upon the defendant of showing harm "would not only be an abdication of judicial responsibility, but could lead to the unjust result of an affirmance . . . even though the appellate court was not convinced beyond a reasonable doubt that the error did not affect" the outcome. *Id*. at 546.

In this case, the State argues that the trial court's failure to make the findings on dangerousness required by section 948.06(8)(e), Florida Statutes, is harmless error and should result in affirmance. The above analysis shows that we believe the State has met its burden under the correct standard of review.

\* \* \*

Having determined that the trial court's error was harmless, we affirm the sentence below.

AFFIRMED.

M.K. THOMAS, J., concurs; WINOKUR, J., concurs specially.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

11

WINOKUR, J., concurring specially.

I agree that we should affirm the sentence and generally agree with the majority opinion, but I wish to clarify one matter.[1]

The majority astutely observes that the trial court's failure to make written findings as to whether Appellant Rachel Shinault poses a danger to the community did not prejudice her in any way. But this conclusion exposes tension between two concepts. The first is that an error cannot support relief on appeal if it is not "adverse" to the appellant. This inquiry is a threshold question: if the complained-of ruling does not harm the appellant, or if it actually benefits her, then there is no basis for appellate relief at all.

The second is the concept of "harmless error," which presumes that the complained-of ruling was adverse to the appellant but examines the record to determine whether the error affected the outcome of the proceeding in such a way that reversal is warranted.

In my view, these concepts are often conflated, especially in criminal appeals. This is because they both involve whether a trial court error is prejudicial to the appellant. But they remain distinct. One is a threshold question; the other is a question of appropriate relief. The distinction is not academic: an appellant bears the burden of demonstrating adverseness, *see*, *e.g.,* section 924.051(3), Florida Statutes (prohibiting appeal "unless a prejudicial error is alleged"); whereas the State bears the burden of demonstrating

_____

[1] I further note, consistent with my concurring opinion in *Hicks v. State*, that *Erlinger v. United States*, 602 U.S. 821 (2024), which simply applied well-settled constitutional law to a particular federal sentencing matter and explicitly did not establish any new standards, has no particular relevance to any matter involving a Florida sentencing law. 422 So. 2d 607, 610 (Fla. 1st DCA 2025) (Winokur, J., concurring). To the extent that 948.06(8)(e)1., Florida Statutes, could violate Shinault's right to a jury, that question can be answered without resort to *Erlinger*.

that that an error is harmless. *See State v. DiGuilio*, 491 So. 2d 1129 (Fla. 1986); *Jackson v. State*, 213 So. 3d 754 (Fla. 2017).

In recognizing the distinction, I conclude that the court's failure to determine whether Shinault poses a danger to the community was not adverse to her. Because Shinault cannot meet this threshold requirement, we should affirm without determining whether the error was "harmless" under the standards applicable to that rule.

I

A

We expressed the "adverseness" principle in *Earl v. State*, where we ruled that a defendant is not entitled to correction of an illegal sentence when the applicable statute required a harsher sentence than the one imposed; we dismissed on the ground that the sentencing mistake was not adverse to the appellant. 276 So. 3d 359, 361 (Fla. 1st DCA 2019), *approved*, 314 So. 3d 1253 (Fla. 2021). *See also Boyd v. State*, 387 So. 3d 454, 460 (Fla. 1st DCA 2024) (noting that an appellant cannot show prejudice when given an unlawfully lenient sentence); *State v. Perez*, 979 So. 2d 986, 988 (Fla. 3d DCA 2008) ("It is axiomatic that no party has standing to object to a ruling which does not adversely affect its substantial rights, let alone one which is favorable to its interests." (citation omitted)).[2]

---

[2] The court typically dismisses the appeal when the appellant fails to demonstrate that the challenged ruling was adverse to him. *See, e.g.*, *Bodenstab v. Dep't of Pro. Regul.*, *Bd. of Med.*, 648 So. 2d 742, 743 (Fla. 1st DCA 1994) (dismissing appeal because challenged order did not adversely affect the appellant). But we held in *Gazoombi v. State* that summary affirmance under Florida Rule of Appellate Procedure 9.315(a), rather than dismissal, is appropriate in direct criminal appeals where the appellant fails to meet this threshold requirement. 406 So. 3d 371, 378 (Fla. 1st DCA 2025). We recognized in *Gazoombi* that "whether there is substantive harm to be remedied *is the threshold question* in any direct appeal" and that "if a district court determines there has been no showing of harmful error committed by the trial court," it should summarily affirm the conviction under rule 9.315(a). *Id.*

## B

The majority correctly determines that the failure to make written findings as to whether Shinault poses a danger to the community did not prejudice her in any way. But the majority, citing *Brooks v. State*, 969 So. 2d 238 (Fla. 2007), concludes that the error was "harmless" because the record shows that the trial court "would have imposed" the same sentence even absent the error. Because *Brooks* makes it clear that the "would have imposed" test applies the *DiGuilio* harmless-error standard, it necessarily places the burden of proving that the court would have imposed the same sentence on the State. *Brooks*, 969 So. at 239.

*DiGuilio* holds that the harmless error test "places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." 491 So. 2d at 1135. Even though the *DiGuilio* harmless error test by its terms addresses errors at trial (that is, by asking whether the error "did not contribute to the verdict"), our supreme court has applied it to sentencing errors. *See*, *e.g.*, *Williams v. State*, 209 So. 3d 543, 566 (Fla. 2017) ("Where the error concerns sentencing, the error is harmless only if there is no reasonable possibility that the error contributed to the sentence."). The State maintains the burden of demonstrating this harmlessness in sentencing. *Jackson*, 213 So. 3d at 786–87 ("[A] sentencing error is considered harmless if the State can prove beyond a reasonable doubt that there is no reasonable possibility that a lesser sentence would have resulted without the error.").[3]

---

(emphasis in original). This procedure differs from affirmance following a determination that a review of the record demonstrates that an error is not harmless under the standards of *DiGuilio* or related cases.

[3] *DiGuilio* adopted a specific harmless-error standard for "constitutional errors." *DiGuilio*, 429 So. 2d at 1134. In *Goodwin v. State*, 751 So. 2d 537 (Fla. 1999), our supreme court expanded *DiGuilio* to all trial errors, including non-constitutional ones. In dissent Justice Wells argued that the enactment of section

14

Section 924.051(3) recognizes the distinction between the adverseness requirement and the harmless error requirement. The subsection reads as follows:

> An appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error. A judgment or sentence may be reversed on appeal only when an appellate court determines after a review of the complete record that prejudicial error occurred and was properly preserved in the trial court or, if not properly preserved, would constitute fundamental error.

The first sentence states the adverseness requirement: an appeal may not be taken unless the appellant "alleges" a "prejudicial" error. Because it involves a requirement to allege error, I take this as a threshold requirement to raise an error that prejudiced the appellant, or stated differently, error that was adverse to the appellant. The second sentence is the harmless error requirement: a judgment may not be reversed unless a "review of the complete record" demonstrates that prejudicial error occurred. In short, I believe that section 924.051(3) recognizes that the adverseness requirement and the harmless error requirement are distinct.[4]

_____

924.051(7) necessarily set a different harmless-error standard for non-constitutional errors. While I am persuaded by Justice Wells' opinion, our supreme court has yet to reconsider *Goodwin*.

[4] The majority argues that this conclusion is inconsistent with *Goodwin*, because it ruled that "prejudicial error" in section 924.051 means "harmless error." In fact, *Goodwin* solely addressed the requirements of subsection (7) of section 924.051 and wrote nothing about subsection (3), in particular the first sentence of subsection (3) that prohibits appeal unless the appellant "allege[s]" prejudicial error. Subsection (7) clearly involves harmless error, as it addresses whether a conviction or sentence may be "reversed;" that is, it addresses appropriate relief rather than a threshold

## II

The adverseness principle applies here. If the sentencing court had filed a written order concluding that Shinault posed a danger to the community, in accordance with section 948.06(8)(e)1., the only result would have been that revocation of her probation would have been mandatory. § 948.06(8)(e)2.a., Fla. Stat. Conversely, if the court had found that Shinault did *not* pose a danger to the community, it still would have been permitted to revoke probation, but revocation would not have been required. § 948.06(8)(e)2.b., Fla. Stat. If the error harmed anyone, then it was the State because the lack of a finding precluded the State from claiming that revocation was mandatory.[5]

The sentencing court revoked Shinault's probation, without regard to the factors listed in section 948.06(8)(e)1. Accordingly,

matter. Specifically, *Goodwin* addressed the requirement in subsection (7) that assigns to the appellant "the burden of demonstrating that a prejudicial error occurred." As I noted above, I question the *Goodwin* court's conclusion that the Legislature could not require the appellant to demonstrate that the error was harmful rather than require the State to prove that an error was harmless, but *Goodwin* has not been reconsidered. But even if I accepted *Goodwin* unreservedly, it still does not address the adverseness requirement. Its discussion of "prejudicial error" refers to that term's use with regard to the harmless-error requirements of subsection (7). I believe my construction of subsection (3) is consistent with cases requiring the appellant to establish adverseness as a threshold matter.

[5] Noting that the ultimate sentencing decision "cannot be described as favorable to [Shinault] or more lenient than the law requires" because the trial court revoked probation and imposed a prison sentence, the majority concludes that the adverseness principle cannot apply. (Majority op. at 10). But the error Shinault alleges is not an unlawful revocation of probation; it is the failure to make written findings as to whether she posed a danger to the community. Regardless of whether this error was "favorable" to Shinault, it was certainly not adverse to her.

16

even if the court had made the dangerousness finding under that subparagraph, then Shinault could not have received a more lenient sentence than the one imposed. Again, the only possible different outcome would have been mandatory revocation rather than a discretionary one. In other words, the trial court's failure to comply with section 948.06(8)(e)1. was not adverse to Shinault at all, so she has no basis to seek appellate relief.[6]

The majority opinion admirably demonstrates why the court's failure to make a written finding of dangerousness could not have led to a different sentence for Shinault. The court concludes that the error is therefore harmless. But in my view, we need not consider whether this conclusion means that the State bears the burden of demonstrating that the error is "harmless beyond a reasonable doubt" and fails to support reversal. Instead, because Shinault did not meet her threshold burden of demonstrating that the failure to make a finding of dangerousness was adverse to her, we need not consider whether the error was "harmless."

Subject to these observations, I join the majority's decision to affirm.

––––––––––––––––––––

Jessica J. Yeary, Public Defender, and Joel Daniel Arnold, Assistant Public Defender, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Darcy Townsend, Assistant Attorney General, Tallahassee, for Appellee.

---

[6] *Barber v. State*, mentioned by the majority, acknowledged that the revocation of probation was legal with or without a dangerousness finding pursuant to section 948.06(8)(e)1., but reversed the sentence anyway because the finding was required by statute. 207 So. 3d 379, 383–84 (Fla. 5th DCA 2016). This view distorts the purpose of appellate review by ignoring the adverseness requirement. We do not hear appeals so that we can correct every mistake made by a trial court; rather, we hear them to address whether a party has been prejudiced by a judicial error. Put another way, appellate courts do not exist to monitor trial courts for the purpose of enforcing compliance with statutory requirements; they exist to correct prejudicial errors.